# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRIS LOGAN,<br>    Plaintiff<br><br>    v.<br><br>CITY OF CHICAGO,<br>    Defendant | No. 21 CV 5380<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chris Logan filed this suit against his former employer, Defendant City of Chicago ("the City"), alleging race- and disability-based discrimination, failure to accommodate, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (R. 1.)[1] This matter is before the Court on the City's Motion for Summary Judgment under Federal Rule of Civil Procedure 56. (R. 71.) For the following reasons, the City's motion is granted.

## BACKGROUND[2]

Logan is an African American man who alleges that he has depression, anxiety, and post-traumatic stress. (R. 86, Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp. to Def.'s SOF") ¶ 1). Logan worked for the City's Department of Aviation from 1992 until he was terminated in March 2023. (R. 71 at

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.
[2] The background facts are taken from the parties' L.R. 56.1 Statements.

1 n.1.) Logan began as an Aviation Security Officer ("ASO") and was promoted to Sergeant in 2019. (Pl.'s Resp. to Def.'s SOF ¶¶ 1, 66; Logan Dep. at 16:4–6.) While Logan was Sergeant, Deputy Commissioner Everett was Logan's Department Head. (Pl.'s Resp. to Def.'s SOF ¶¶ 2, 25.)

## I. DISCIPLINARY RECORD

All employees are subject to the City's Personnel Rules. (*Id.* ¶ 11; Logan Dep. at 30:4–20.) Under the Personnel Rules, employees can be disciplined for: 1) tardiness/absenteeism; 2) misrepresentation; 3) criminal or improper conduct; 4) conduct involving job performance; and 5) violations of City policies and rules. (Pl.'s Resp. to Def.'s SOF ¶ 11.) There are four types of disciplinary actions which can be imposed on an employee: 1) a reprimand; 2) a suspension; 3) a demotion; and 4) discharge. (*Id.* ¶ 13.) Relevant here, a reprimand is a censure, given orally or in writing, expressing formal disapproval of the actions of an employee, which carries no loss of privileges. (*Id.*) A suspension, however, involves the temporary loss of the privileges of employment, including, but not limited to, salary or wages. (*Id.*)

Following his promotion, Logan was disciplined for violating various provisions of the Personnel Rules. He was suspended for eight days in June 2020, for fifteen-days in July 2020, and for twenty-nine-days in January 2021. (*Id.* ¶¶ 26, 29, 32, 36, 38.) The June 2020 suspension concerned Logan telling one of his supervisors, Lieutenant Hasan, after receiving a verbal reprimand from him in March 2020, that "[Hasan's] name will be the next lawsuit that he [would] be filing." (*Id.* ¶ 26; Logan Dep. at 55:5–10.) Logan was suspended in July 2020 because he did not participate

in an annual performance evaluation. (Pl.'s Resp. to Def.'s SOF ¶¶ 34, 36.) The January 2021 suspension pertained to Logan approving overtime for twenty-one ASOs without authorization and forging sixteen of their signatures. (*Id.* ¶ 38.)

## II. ACCOMMODATION REQUEST

Logan also requested and received accommodation restricting his work hours. In January 2020, Logan filed a Request for Reasonable Accommodation seeking to be prevented from working during the First Watch. (Pl.'s Resp. to Def.'s SOF ¶¶ 42, 62; R. 75-10 at 2.) His request stated that working with the Watch Commander currently assigned to the First Watch would "force[]" him to "work alongside[sic] his abuser," which would cause him to suffer "mental impairment," evidenced by "difficulty sleeping and concentrating." (R. 75-10 at 1.) Logan further claimed "depression and anxiety from . . . working with [the First Watch Commander]" who he alleged had physically assaulted and falsely accused him of violating the Personnel Rules. (*Id.*)

The City's Disability Officer sought additional information on Logan's limitations from his doctor, Dr. Baker. (Pl.'s Resp. to Def.'s SOF ¶ 42; *see* R. 75-13.) Dr. Baker provided that Logan "has anxiety attributed to a specific individual and circumstance, and has PTSD symptoms." (Pl.'s Resp. to Def.'s SOF ¶ 42; R. 75-13 at 1.) Dr. Baker also explained that "there is a specific individual on First [] Watch who has mistreated [Logan] in the past and triggers symptoms consistent with PTSD." (R. 75-13 at 2.) On March 5, 2020, the City issued a Determination Notice that granted Logan's requested accommodation. (Pl.'s Resp. to Def.'s SOF ¶ 42; R. 75-14 at 2–3.) The notice limited "the portion of [Logan's] accommodation that was granted,

3

including the expected date of implementation" "to the Third Watch at O'Hare airport . . . through December 31, 2020." (R. 75-14 at 2.) Logan did not make any further accommodation requests. (Pl.'s Resp. to Def.'s SOF ¶ 43.)

### III. PROMOTIONAL OPPORTUNITIES & OTHER ALLEGED MISTREATMENT

Logan additionally applied for multiple promotions. He applied to be a Shift Supervisor in June 2019 and March 2021. (*Id.* ¶¶ 48, 50–51.) Applicants are presented with three screening questions when they apply to this position. (*Id.* ¶ 46.) Based on their responses, applications are sorted by a software called Taleo into one of four tiers. (*Id.*) No City recruiter or other City employee is involved in the automated Taleo sorting process. (*Id.*) Candidates who only answer one of the three questions correctly are sorted into the third tier; those in the third tier and below are not interviewed or hired for the position. (*Id.*)

The Shift Supervisor position's minimum qualifications were: (1) at least five years of work experience as a Sergeant, (2) at least five years of work experience as a first line Law Enforcement supervisor for a Federal, State, County or Municipal Law Enforcement agency, and (3) successful completion of at least a bachelor's degree as of the date of application. (*Id.* ¶ 48.) At the time of his June 2019 and March 2021 applications, Logan did not possess any of these qualifications. (*Id.* ¶¶ 48, 51.) Accordingly, his applications were sorted into the bottom tier and he was not interviewed for the position. (*Id.* ¶¶ 49, 52.)

Logan additionally applied to become a Training Supervisor in October 2020. (*Id.* ¶ 62.) Because training unit staff work hours on all three watch shifts as part of

their responsibilities, (*id.* ¶ 61), and Logan's accommodation restricted his work hours, a supervisor told him that he could not be a training supervisor. (*Id.* ¶ 62.)

Logan also claims that he was wrongly denied his preferred vacation days and shifts, (*id.* ¶¶ 64–67), received low performance evaluations (*id.* ¶¶ 68–70, and was subjected to an extended probationary period. (R. 77-2 ("EEOC Charge") at 3–5.)

## IV.  PROCEDURAL HISTORY

On March 6, 2021, Logan filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging race and disability discrimination and retaliation from June 3, 2019 through the present. (*Id.* ¶ 8; *see* EEOC Charge at 2; Logan Dep. at 21:6–24.) The EEOC issued a Notice of Right to Sue on July 13, 2021. (R. 73-3 at 6–9.) Logan timely filed his complaint on October 11, 2021. (R. 1); *see Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 849–50 (7th Cir. 2001) ("A civil action alleging a Title VII violation must be filed within 90 days of receiving a right-to-sue notice from the EEOC.").[3]

## LEGAL STANDARD

"Summary judgment is warranted if the evidence, when viewed in the light most favorable to the non-moving party, presents 'no genuine issue as to any material fact' such that 'the moving party is entitled to a judgment as a matter of law.'" *Orton-Bell v. Indiana*, 759 F.3d 768, 772–73 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(c)). In reaching its decision, the Court "may not assess the credibility of witnesses, choose between competing inferences[,] or balance the relative weight of conflicting

---

[3] Jurisdiction over these federal claims is proper under 28 U.S.C. § 1331.

evidence." *Id.* at 773. Instead, the Court affords the non-movant "the benefit of conflicts in the evidence and of any inferences in his favor that might reasonably be drawn from the evidence." *Lane v. Riverview Hosp.*, 835 F.3d 691, 694 (7th Cir. 2016).

## ANALYSIS

Logan asserts claims of racial discrimination under Title VII and disability discrimination under the ADA. "Title VII forbids an employer to '. . . discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's . . . [race].'" *Orton-Bell*, 759 F.3d 777 (quoting 42 U.S.C. § 2000e–2). "The ADA prohibits a 'covered entity' from discriminating against a qualified individual with a disability 'in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (quoting 42 U.S.C. § 12112(a)).

### I. TIME-BARRED & UNEXHAUSTED ALLEGATIONS

Before analyzing the allegations supporting Logan's claims of race and disability discrimination, it is necessary to address the scope of conduct at issue. Title VII and ADA claims are time-barred if a charge of discrimination is not filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. *Id.* Additionally, "[a] Title VII" or ADA "complaint generally is limited to the claims asserted in the underlying EEOC discrimination charge." *Majors v. Gen. Elec. Co.*,

6

714 F.3d 527, 536 (7th Cir. 2013).[4] "A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). "In determining whether the current allegations fall within the scope of the earlier charges, the court looks at whether they are 'like or reasonably related to' those contained in the EEOC complaint." *Id.* (citation omitted). "If they are, the court then asks whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Id.*

Here, Logan filed his charge of discrimination with the EEOC on March 6, 2021, and concedes that he can bring claims only for actions that occurred within 300 days prior; that is, after May 10, 2020. (R. 92 at 4.) The Court accordingly does not address Logan's December 2016 requested accommodation and his June 2019 application to be a Shift Supervisor. (*See generally* Pl.'s Resp. to Def.'s SOF ¶¶ 41, 45.)

Moreover, based on the foregoing principles, although Logan's charge largely does not specify when the alleged discriminatory acts occurred, (*see* EEOC Charge at 3–5), at issue are only those acts that occurred after May 10, 2020 and are "like or reasonably related to" the discrete actions identified in his March 6, 2021 charge. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (identifying

---

[4] 42 U.S.C. § 12117 ascribes Title VII's enforcement procedures, including its exhaustion requirements, to suits filed under the ADA. *See, e.g.*, *Massey v. Churchview Supportive Living, Inc.*, No. 17 C 2253, 2017 WL 4547985, at *3 (N.D. Ill. Oct. 12, 2017).

"termination, failure to promote, denial of transfer, or refusal to hire" as "discrete acts of discrimination").

Specifically, Logan's EEOC charge alleged discrimination based on race, retaliation, and disability. (EEOC Charge at 2.) Under the portion of the charge calling for "the particulars" of the alleged discrimination, Logan identifies the following discrete discriminatory acts: (i) being excluded from the annual shift selection process, while other employees with less seniority were allowed to participate, (ii) receiving low performance evaluations, without any supporting evidence, (iii) being unjustifiably suspended by the City of Chicago, (iv) being placed on an extended probationary period, and (v) being denied promotion and professional development opportunities. (*Id.* at 3–5).

Any suspensions or advancement opportunity denials that occurred after March 6th are not "like or reasonably related to" the discrete actions within Logan's EEOC charge. *See, e.g.*, *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009) ("Lloyd's suspension was not reasonably related to his final EEOC charge because the discipline was imposed for additional infractions that occurred later[.]"); *see generally Nat'l R.R. Passenger Corp.*, 536 U.S. 101 at 110 ("A discrete retaliatory or discriminatory act "occurred" on the day that it 'happened.'"). This means that Logan cannot recover based on his applications to be a Shift Supervisor in October 2021, March 2022, and November 2022. (*See generally* Pl.'s Resp. to Def.'s SOF ¶¶ 53, 55, 58.) He also cannot recover for the March 2020 Oral Reprimand and the February 2020 suspension. (*See generally id.* ¶¶ 26, 29.) The City also argues that the January

8

2021 twenty-nine-day suspension is non-exhausted. (R. 72 at 9.) The Court disagrees; Logan's March 6, 2021 EEOC charge specifically alleged that he had been unjustifiably suspended, and so this claim is "like or reasonably related to" the information within the charge.

## II.  DISPARATE TREATMENT

The Court next examines whether Logan's non-time barred and properly exhausted allegations support an inference of discrimination on the basis of Logan's race or alleged disabilities. "For summary judgment, [the Court] ask[s] 'whether the evidence would permit a reasonable fact-finder to conclude that [Logan] was subjected to an adverse employment action based on a statutorily prohibited factor— here, race [or disability].'" *Logan v. City of Chi.*, 4 F.4th 529, 536 (7th Cir. 2021) (citation omitted). "Whether a plaintiff offers direct or circumstantial evidence of discrimination, . . . 'all evidence belongs in a single pile and must be evaluated as a whole.'" *Id.* (citation omitted).

"One way of proving employment discrimination under Title VII" and the ADA "remains the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)." *Id.*; *Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1055 (7th Cir. 2024) (ADA). Under the *McDonnell Douglas* framework, Logan carries the burden of establishing a *prima facie* case of discrimination. *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891–92 (7th Cir. 2016). "If any one of the elements of [Logan's] *prima facie* case is lacking, [he] loses." *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 642 (7th Cir. 2013). Logan claims that he can establish a *prima facie* case of race and disability discrimination. (*See* R. 92.) The Court considers the merits of each claim in turn.

### A.  Discrimination on the Basis of Race

"To establish a *prima facie* case," of disparate treatment based on race Logan "must establish that '(1) [he] is a member of a protected class, (2) [his] job performance met [his employer's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff.'" *Orton-Bell*, 759 F.3d at 777 (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006)).

Here, there is no dispute that Logan, as an African American, is a member of a protected class. (*See* R. 72 at 10–14.) Logan's race discrimination claims fail nevertheless because the mistreatment he alleges, *i.e.*, not obtaining his preferred vacation days or shifts, receiving low performance evaluations, and being subjected to an extended probationary period, do not rise to the level of adverse actions. Additionally, Logan fails to support his alleged unfair suspensions with competent evidence of a similarly situated individual who was not in the protected class that was treated more favorably. Finally, in addition to failing to identify a comparator, Logan's failure-to-promote claims fail because the evidence shows that he was not qualified for the Training Supervisor and Shift Supervisor positions he sought.

#### 1.  Non-Adverse Employment Actions

"While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000). An adverse action is "a materially adverse change in the terms and conditions of employment [that is]

10

more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017).

> "Such actions include: (1) diminishing an 'employee's compensation, fringe benefits, or other financial terms of employment,' including termination; (2) reducing long-term career prospects 'by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted'; and (3) changing 'the conditions in which [an employee] works . . . in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment.'"

*Id.* (citation omitted). "Unfair reprimands or negative performance evaluations, unaccompanied by some *tangible* job consequence, do not constitute adverse employment actions." *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (emphasis in original).

In light of the foregoing, it is evident that Logan's failure to receive his preferred vacation days or shifts are not adverse actions under Title VII. Additionally, because Logan does not allege any tangible job consequence that accompanied his low performance evaluations or extended probationary period, they are likewise not properly considered adverse employment actions.

### 2. Suspensions and Failures to Promote

That leaves the allegations in Logan's EEOC charge that he was unfairly suspended and denied promotion to the Training Supervisor and Shift Supervisor positions. (*See* R. 1 ¶¶ 23–29; EEOC Charge at 2–5.); *see generally Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 914 (7th Cir. 2022) ("[A]ll unpaid suspensions—regardless of the length—could constitute adverse employment actions."); *Tyburski v. City of Chi.*,

11

964 F.3d 590, 598 (7th Cir. 2020) ("A failure to promote an employee can be an adverse employment action under the ADEA."). The Court separately addresses the allegations underlying his claims of wrongful suspensions and denied promotions.

### a. Suspensions

The Court first addresses Logan's June 2020, July 2020, and January 2021 suspensions. Concerning the June 2020 and July 2020 suspensions, Logan does not allege that these adverse actions were imposed based on his race and does not offer any comparator. *See Orton-Bell*, 759 F.3d at 777; (Pl.'s Resp. to Def.'s SOF ¶¶ 33, 37.)

For January 2021, when Logan was suspended for approving overtime for twenty-one ASOs without authorization and forging signatures of sixteen of those ASOs, Logan identifies two individuals he believes were treated more favorably than him. But Logan fails to supply any admissible proof that they are suitable comparators, *i.e.*, that they "(1) 'dealt with the same supervisor,' (2) '[were] subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him].'" *Orton-Bell*, 759 F.3d at 777 (citations omitted); *see Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008) ("[A] plaintiff must show that members of the comparative group are 'directly comparable to her in all material respects.'").

Logan first identifies "former Sergeant Duffy," a purportedly White employee who Logan testified another officer told him "would always sign third watch officers' overtime logs." (Pl.'s Resp. to Def.'s SOF ¶ 40.) But this testimony is hearsay. "'Hearsay,' in its simplest terms, is an out-of-court statement offered for the truth of the matter asserted." *Jordan v. Binns*, 712 F.3d at 1123, 1126 (7th Cir. 2013); *see* Fed.

12

R. Evid. 801(c). "As a general rule, hearsay is not admissible." *Id.* at 1126–27 (citing Fed. R. Evid. 802). A party may not rely upon inadmissible hearsay in an attempt to defeat summary judgment. *MMG Fin. Corp. v. Midwest Amusement Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011).

Moreover, even if this evidence were admissible, Duffy remains an inapt comparator because there is no evidence allowing a jury to conclude that Duffy and Logan are directly comparable in all material respects. Though a jury could infer that Duffy and Logan, both Sergeants, were subject to the same standard prohibiting them from forging ASO signatures, there is no evidence about whether Deputy Commissioner Everett was also Duffy's supervisor. There is also no evidence about the circumstances surrounding their alleged misconduct from which a jury could determine whether there were no mitigating or differentiating circumstances.

Logan's second identified comparator—Sergeant Frigo—similarly fails. Logan relies on his own observations of Sergeant Frigo not properly signing the time logs. (*See* Pl.'s Resp. to Def.'s SOF ¶ 40.) Yet, he presents no testimony that City management was ever aware of Frigo's alleged behavior. (*Id.*) Absent such, even viewing the evidence in a light most favorable to Logan, no jury could reasonably conclude that Frigo had the same supervisor as Logan or that the supervisor responded differently to Logan's misconduct. Further, the total lack of detail surrounding Frigo's alleged misconduct precludes a jury from deciding that there were no other underlying mitigating or differentiating circumstances.

### b. Failure to Promote[5]

The Court considers the City's denial of Logan's applications to be a Training Supervisor and Shift Supervisor within the failure-to-promote framework. In addition to putting forth comparator evidence, to establish a *prima facie* case in a failure-to-promote case, Logan must supply some evidence that: (1) he is a member of a protected class; (2) he was qualified for the position sought; and (3) he was rejected from the position. *Logan*, 4 F.4th at 536.

#### i. Training Supervisor

Logan cannot satisfy his burden of establishing a *prima facie* case regarding the City's rejection of his Training Supervisor application. First, he only speculates that he was better qualified for the position than the two individuals selected. (*See* Pl.'s Resp. to Def.'s SOF ¶ 63); *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[I]t is well-settled that speculation may not be used to manufacture a genuine issue of fact."). Second, Logan was not qualified for the Training Supervisor position. A requirement for the Training Supervisor position was availability to work on all three watch shifts. (Pl.'s Resp. to Def.'s SOF ¶ 62.) But Logan could not fulfill such obligation due to his accommodation restricting him to working only during the Third Watch. (*Id.* ¶¶ 42, 62; *see* R. 75-14 at 2.)

---

[5] Although arising within the context of race-based discrimination, the following analysis applies equally to Logan's claim that the City's denial of his applications to be a Training Supervisor and Shift Supervisor were based on disability discrimination. Essentially, there is no evidence to support a jury concluding that he was a "qualified individual," *i.e.*, "someone with a disability who can perform the essential functions of the job *with or without* reasonable accommodation." *Lloyd*, 552 F.3d at 601 (emphasis added). As explained, Logan could only work the Third Watch, and so he could not perform the essential job duties of a Training Supervisor. He also was unqualified to be a Shift Supervisor for the reasons discussed herein.

### ii. Shift Supervisor

Logan also cannot satisfy his burden of establishing a *prima facie* case regarding the City's rejection of his Shift Supervisor applications. He offers no evidence that those selected for the positions were not African American and less qualified than him. (*See* Pl.'s Resp. to Def.'s SOF ¶¶ 49, 52, 54, 57, 60.) More importantly, Logan did not possess the minimum qualifications to become a Shift Supervisor in June 2019 and March 2021. Specifically, Logan did not have a bachelor's degree, had not worked for five years as a first line Law Enforcement officer, and had not worked for five years as a Sergeant. Although his claims pertaining to his March and November 2022 applications are not properly exhausted and are unsupported by comparator evidence, for the sake of completeness, the Court addresses Logan's argument that he had been a Sergeant for administrative purposes for at least five years by the time of these applications due to his retroactive promotion, despite having worked in that role for less than three years. (*See id.* ¶ 66.) Even granting Logan an inference that his retroactive promotion could count toward his years of experience as a Sergeant, he still only possessed one of three minimum qualifications for the position.

\*\*\*

In sum, Logan not obtaining his preferred vacation days or shifts, receiving low performance evaluations, and being subjected to an extended probationary period are not adverse actions. Although Logan's suspensions constitute adverse actions, the City is entitled to summary judgment on these claims because he failed to supply evidence of any similarly situated individual who was not in his protected class who

15

was treated more favorably. Further, although his failure-to-promote claims involve adverse actions, these claims fail because he fails to point to competent comparator evidence and the evidence shows that he was unqualified for the Training Supervisor and Shift Supervisor positions.

### B. Discrimination on the Basis of Disability

The Court now considers Logan's claims of disability discrimination and that the City failed to accommodate him. (*See* R. 1 ¶¶ 30–45.) The City is entitled to summary judgment on Logan's disability discrimination claims because there is no evidence that Logan is disabled under the ADA. Indeed, "not all plaintiffs with health conditions have a 'disability' within the meaning of the ADA." *Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir. 2002). Instead, Logan is disabled under the ADA if he: (1) has a physical or mental impairment which substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); *see Nawrot*, 277 F.3d at 903.

Here, without citing to authority, Logan asserts that his "history of receiving accommodation[]" restricting him to working the Third Watch is evidence that he is disabled. (R. 92 at 7; *see* Pl.'s Resp. to Def.'s SOF ¶ 42.) The undeveloped nature of Logan's response is itself sufficient reason to deem his disability claims waived. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *see, e.g.*, *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (concluding that failing to present legal arguments or cite to relevant authority had waived retaliation claim).

16

Nevertheless, the accommodation Logan received in March 2020 does not demonstrate a "physical or mental impairment which substantially limits one or more of his major life activities." A disability *entitles* someone to an accommodation by their employer under the ADA, 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard" to employment); but there mere fact an individual was previously accommodated does not. The evidence presented shows that the City granted Logan's request only to the extent that he was not required to work alongside a specific supervisor. (R. 75-14 at 2.) "A personality conflict with a supervisor or coworker does not establish a disability within the meaning of the disability law . . . even if it produces anxiety and depression, as such conflicts often do." *Palmer v. Cir. Ct. of Cook Cnty., Ill.*, 117 F.3d 351, 352 (7th Cir. 1997) (citation omitted).

Finally, even if Logan could somehow prove that he is disabled, his ADA failure to accommodate claim would fail because the record shows that all of Logan's accommodation requests were granted. (*Compare* R. 1 ¶¶ 39–45 *with*, Pl.'s Resp. to Def.'s SOF ¶ ¶¶ 41–42.) Accordingly, the Court grants the City's motion for summary judgment on Logan's disability discrimination claims.

### III. RETALIATION

Logan further contends that he was subject to retaliation. (R. 1 ¶¶ 46–54; EEOC Charge at 2; R. 92 at 9.) Title VII and the ADA "prohibit[] retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016); *Dickerson v. Bd. of Tres. of*

*Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (ADA). "A retaliation claim requires proof that the plaintiff suffered an adverse employment action because of his statutorily protected activity; in other words, the plaintiff must prove that he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord*, 839 F.3d at 563. An employee engages in statutorily protected activity when: (1) he has a good faith belief that he is opposing a practice prohibited under Title VII, and (2) this belief is objectively reasonable. *See Hamner v. St. Vincent Hosp. & Health Care Center, Inc.*, 224 F.3d 701, 707 (7th Cir.2000).

The Court's analysis begins and ends with the protected activity element. Logan points to only three potential protected activities: (1) filing a grievance on September 21, 2016 challenging a fourteen-day suspension, (*see generally* Pl.'s Resp. to Def.'s SOF ¶¶ 23–25); (2) asking Hasan for "evidence" that he had failed to complete his administrative duties regarding his eight-day suspension in June 2020, (*id.* ¶ 33); and (3) "whistle-blowing" to a supervisor that another Sergeant took medical leave to avoid working midnights. (*Id.* ¶ 31; EEOC Charge at 3.)

Here, no reasonable jury could conclude that Logan had an objective and reasonable good faith belief that he was opposing a prohibited practice because none of these alleged activities have anything to do with Logan's race or disability. *See, e.g., Sung Park v. Ind. U. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (explaining that the failure to specifically plead that race "had anything to do with what happened" dooms a claim of race-based discrimination). First, the September

18

21, 2016 grievance did "not relate to [his] protected characteristics." *Giese v. City of Kankakee*, 71 F.4th 582, 591 (7th Cir. 2023). Logan does not dispute the evidence that the arbitrator who issued the decision regarding his grievance found his filing pertained to "a dispute over a woman[sic]" and that Logan did not allege "discrimination on any illegal basis such as sex, race[,] or age." (Pl.'s Resp. to Def.'s SOF ¶ 25.)

Likewise, Logan's inquiry to Hasan had nothing to do with his protected class characteristics. (*See id.* ¶ 33; Logan Dep. at 60:24–61:15.) Finally, neither Title VII nor the ADA protect an individual from making allegations that their co-worker was improperly seeking medical leave. (Pl.'s Resp. to Def.'s SOF ¶ 26.) "Without a link between the employer's actions and [Logan's] protected class, [these] conversation[s] cannot constitute protected activity under Title VII." *Giese*, 71 F.4th at 591.[6]

### IV. HOSTILE WORK ENVIRONMENT

The City also moves for summary judgment on Logan's hostile work environment claim. (R. 72 at 27–30.) The Court notes that the complaint does not assert a hostile work environment claim. (*See* R. 1.) Nevertheless, Logan asserts in his response brief, once again without citation to any legal authority, that the City's "multiple denial of advancement opportunities" and "multiple and severe" suspensions are sufficient evidence to defeat summary judgment on his hostile work environment claim. (R. 92 at 8–9.) Logan is incorrect; as explained, there is no

---

[6] Similarly, Logan's claim that Everett retaliated against him because Everett had unsuccessfully tried to have Logan fired is wholly unsupported by evidence from which a jury could reasonably conclude Everett's actions were based on Logan's protected-class status.

19

evidence of race-based harassment. Moreover, in the absence of any evidence that the rejected job applications or suspensions were "objectively hostile," Logan's Title VII allegations cannot survive summary judgment. *Alamo*, 864 F.3d at 549.

## CONCLUSION

For the reasons stated in this Memorandum Opinion, the defendant's motion for summary judgment [71] is granted. Civil case terminated.

Date: September 25, 2024

JEREMY C. DANIEL
United States District Judge